IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

MEMPHIS DIVISION

MIKE AND LEONIE HEFLEY,

    Plaintiff,

vs.

ACUITY, A MUTUAL INSURANCE COMPANY,

    Defendant.

No. 1:24-CV-01156-STA-jay
District Judge S. Thomas Anderson
Magistrate Judge Jon A. York

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT**

Plaintiffs, Mike and Leonie Hefley ("Plaintiffs"), by and through undersigned counsel herein moves this honorable Court for an Order denying the defendant's Motion to Enforce Settlement, or in the alternative, for an evidentiary hearing to determine the factual basis for or against the Motion to Enforce Settlement, and in support thereof says:

**FACTUAL BACKGROUND**

1. This case involves a denied first-party property claim for extensive damage to Plaintiffs' residential property.

2. Plaintiffs reported hail and wind damage occurring on or about May 2, 2022.

3. Acuity's adjuster inspected the insured property, and completed an estimate of damages. Plaintiffs' adjuster similarly inspected the insured property, and completed a competing estimate.

4. The competing estimates varied as to scope of repairs and cost of repairs and the Plaintiffs demanded appraisal, and completed the proof of loss.

5. Plaintiffs demanded payment, however Acuity refused to pay or to submit the claim to appraisal, as required by the terms of the operative policy.

6. On June 14, 2023, Plaintiffs filed suit against Acuity for breach of the operative policy.

7. On January 29, 2025, Plaintiffs' prior counsel, Drayton Berkley ("Mr. Berkley"), communicated a plan to extend a settlement demand to the Defendant of $99,000.00, via a text exchange with Plaintiff, Leonie Hefley ("Mrs. Hefley"). Plaintiff, Mike Hefley ("Mr. Hefley"), was not included in this text exchange.

8. On January 25, 2025, Mr. Berkely made a settlement offer to Acuity, via email, to settle the "claims for the roof, fence and additional structure" for $99,500.00, $5,000 more than he discussed with Mrs. Hefley.

9. On February 11, 2025, Acuity's counsel made a counteroffer of $20,000.00. Mr. Berkley discussed this counteroffer with Mrs. Hefley via alone text message and indicated that he would counter with $80,000.00.

10. On February 12, 2025, Mr. Berkley advised that Defendant's counsel came back with a "max" offer of $24,000 but indicated that he may be able to "squeeze another $1,000.00 out of them," to make the settlement $25,000.00.

11. Following this exchange, Mrs. Hefley questioned whether $25,000.00 would be sufficient to properly repair her roof. She further questioned whether this settlement would include attorney's fees and her public adjuster's percentage.

12. In response to this question, Mr. Berkley advised that his fee percentage was one-third of the settlement amount, but also, erroneously stated that the public adjuster was "out of the picture", and that if it did become an issue, he would deal with the matter.

13. Mr. Hefley was not included in the text message thread, nor did Mr. Berkely ever consult him on the settlement negotiations.

14. On February 13, 2025, Mr. Berkley advised that Defendant extended their last and final offer, in the amount of $27,000.00.

15. When Mrs. Hefley was advised that she would receive less than $20,000.00 after attorney's fees and costs were factored in, Mrs. Hefley expressed concerns that she would not be able to address her roof repairs with that settlement amount.

16. Nevertheless, Mr. Berkley continued to pressure Mrs. Hefley into accepting the offer, and she eventually relented.

17. Again, at no time was Mr. Hefley included in the conversation or consulted by Mr. Berkley about the settlement offer.

18. The following day, on February 14, 2025, Mrs. Hefley advised that after speaking with Mr. Hefley, he advised that he did not want to accept the settlement offer because it would not be enough to cover the roof replacement.

19. On February 15, 2025, in response to Mrs. Hefley's retraction of her settlement acceptance, Mr. Berkley continued to convince Mrs. Hefley to go forward with the settlement of the claim for $27,000.00. Mr. Berkley never mentioned to Mrs. Hefley that he had already communicated her prior acceptance to defense counsel.

20. On March 3, 2025, Mr. Berkley forwarded a copy of a Settlement Agreement and Release provided by the Defendant, along with instructions to sign and email it back to him. He

further advised that if she and her husband insisted on not settling the case, their next course would be to nonsuit the case, and see if they could reach a better settlement out of court. Again, he failed to mention that he had reached a settlement with Defendant based on Mrs. Hefley's initial acceptance and further failed to mention the legal effect of this initial acceptance.

## MEMORANDUM OF LAW AND ARGUMENT

This Court should deny Defendant's Motion to Enforce Settlement. It is well established that "[a] settlement agreement is merely a contract between the parties to the litigation.... As such, the formation, construction, and enforceability of a settlement agreement is governed by local contract law." *Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 385 (Tenn. 1996). Under Tennessee law, "a contract 'must result from a meeting of the minds of the parties in mutual assent to the terms.'" *Id*. at 386. Furthermore, "[i]t is fundamental that a contract is enforceable only to the extent that it is assented to by the parties." *Id*. Therefore, the consent of all parties is required to have a valid and enforceable settlement agreement. *See Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 385 (Tenn. 1996). Likewise, "[a]ttorneys have no power to surrender substantial rights of their clients without express authority." *Long v. Kirby-Smith*, 292 S.W.2d 216, 222 (Tenn. 1956). "An attorney, merely by virtue of his employment as such, has no implied authority to release a claim or cause of action, or otherwise give up the rights of his client." *Id*.

Here, Mr. Berkley did not have the express consent of Mr. Hefley to enter into a settlement with Defendant. Without Mr. Hefley's consent, Mr. Berkley's agreement to settle is invalid. Once Mr. Hefley was finally informed by his wife of the settlement discussions, he immediately stated that he was not willing to settle for that amount. At no time did Mrs. Hefley indicate to Mr. Berkley that she had full authority to settle on her husband's behalf and Mr. Berkely's failure to confirm such authority should not work to surrender Mr. Hefley's rights to the claim.

Additionally, Mrs. Hefley's consent was equivocal and uninformed. Mr. Berkely failed to properly explain how the settlement would be distributed and incorrectly stated that the fee of a third party was somehow inconsequential. When she was presented with the potential distribution amount, which was still erroneous because it failed to account for the public adjuster's fee, her initial response was not to accept the settlement. However, after further cajoling by Mr. Berkley, she acquiesced. While Defendant was not a party to these conversations, the conversations serve as factual support that there was no meeting of the minds between the parties as required by Tennessee law.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Enforce Settlement should be denied because one party to the case was not involved in the settlement agreement at all and the other party's consent was not properly obtained. As such, the agreement is invalid and unenforceable.

**WHEREFORE**, Plaintiffs respectfully request that this Court deny Defendant's Motion to Enforce Settlement, or in the alternative, conduct an evidentiary hearing on the matter, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Tania Williams*
Tania Williams, Esq.
Florida Bar No. 599425
**INSURANCE LITIGATION GROUP, P.A.**
1500 NE 162nd Street
Miami, FL 33162
(786) 529-0090 Office
Facsimile: (866) 239-9520
E-Mail: Twilliams@ilgpa.com
monique@ilgpa.com
service@ilgpa.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of May, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record: Parks T. Chastain, and Hannah Leifel, of BREWER KRAUSE BROOKS & CHASTAIN, 545 Mainstream Drive, Suite 101 Nashville, TN 37228 at pchastain@bkblaw.com, and hleifel@bkblaw.com via electronic service and/or electronic mail.

*/s/ Tania Williams*
Tania Williams, Esq.